Filed 10/16/23

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re R.Q. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>K.Q.,<br><br>　　　Defendant and Appellant. | E080765<br><br>(Super.Ct.Nos. J292149 & J292150)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County. Steven A. Mapes, Judge. Affirmed.

Marisa L. D. Conroy, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and David R. Guardado, Deputy County Counsel, for Plaintiff and Respondent.

At the dispositional hearing, the juvenile court placed R.Q. (minor) with her biological father, C.H. On appeal, defendant and appellant, K.Q. (presumed father), contends the court abused its discretion in placing minor with C.H. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

On January 18, 2022, personnel from plaintiff and respondent, San Bernardino County Children and Family Services (the department), received a referral alleging physical abuse to R.Q. by A.P. (stepmother). Minor disclosed stepmother had choked her and pulled her hair. The family had an open, voluntary family maintenance plan effective October 22, 2021, due to stepmother hitting minor. The department had also received a previous referral on December 3, 2021, alleging physical abuse to minor by stepmother. A.H., minor's biological mother (mother), did not live in the home.

The social worker spoke to minor and R.Q.2, the biological daughter of presumed father and mother, who both reported incidents of physical abuse by stepmother. Stepmother and presumed father both denied the allegations. On February 9, 2022, the department took minor into protective custody pursuant to a warrant. On February 14, 2022, the department filed a Welfare and Institutions Code section 300[1] petition alleging mother and presumed father failed to protect minor from physical abuse (a.1, a.2, b.3, & b.4); that mother and presumed father had substance abuse problems (b.5 & b.6); and that mother had an untreated mental illness (b.7).

---

[1] All further statutory references are to the Welfare and Institutions Code.

At the detention hearing on February 15, 2022, mother observed that although presumed father was present at the time of minor's birth, and signed a paternity acknowledgment, he was not her biological father. Mother identified C.H. as minor's biological father. Mother said she informed C.H. about minor when minor was two years old; he had requested visits with her, but because he lived out of state, no visitation had actually taken place. Minor believed presumed father was her biological father. The court ordered mother to provide all information regarding C.H. to the social worker. The court detained minor.

In the March 3, 2022, jurisdiction and disposition report, the department requested a 35-day extension to continue investigating matters. Presumed father denied injuring minor. He denied having a substance abuse problem.

Stepmother reported that minor used to go back and forth between mother and presumed father's home. During this time, stepmother reported mother had a "drug-related relationship" with a man during which stepmother believed minor had been molested. Stepmother admitted there was a bong and paraphernalia in the home for smoking "wax." She said she used to consume marijuana edibles.

C.H. said he would attempt to attend the next hearing and wished to be a party to the case. He wanted a paternity test.

C.H. appeared at the hearing on March 8, 2022. The court asked C.H. if he was ever married to mother, or present at minor's birth. C.H. responded that he was not. He

indicated he did not find out about minor's birth until she was two years old. C.H. said he did not have any court orders for visitation or child support.

C.H. said minor had never lived with him; however, she had visited with him five to 10 times, including four overnight visits. C.H. last saw her at the end of the previous summer. Minor called him "CJ." She did not know that he was her biological father. Minor believed C.H. was just mother's friend. C.H. said he did not have a father-daughter relationship with minor.

Mother stated that minor's birth certificate listed presumed father as her father. The court denied C.H.'s request for a paternity test. The court continued the matter.

In the first addendum to the jurisdiction and disposition report filed April 28, 2022, the department recommended the court find the "b" allegations true but find the "a" allegations untrue. A medical examiner reported R.Q.2 "had a linear scar on her left lower back as well as bruises on her left lower back/upper left buttock, right upper thigh, and lower legs. It was the opinion of the medical examiner that [sibling] made clear disclosures of physical abuse by her step-mother" within the last three weeks which were "suspicious of physical abuse." The medical examiner reported that minor made similar disclosures and had similar marks "highly suspicious of physical abuse."

Mother reported witnessing physical abuse to the children in the past by presumed father. She said the children had reported to her incidents of physical abuse by stepmother. Mother was no longer allowed in presumed father's home due to an altercation between she and stepmother regarding the physical abuse. Mother reported

4

she paid child support to presumed father. She denied having a substance abuse problem but reported presumed father and stepmother smoked marijuana. Mother reported "recreational marijuana use . . . ." She said sometime in late 2017 or early 2018 she lost her apartment and became unable to care for the children. Mother then left minor in presumed father's care.

C.H. reported that at some point in time, presumed father, mother, stepmother, and the children had visited Missouri, C.H.'s state of residence. The children spent the night at his home; minor was attached to him throughout the visit. "He reported that the next and most previous visit with [minor] at his home occurred in June or July of 2021 and lasted for a week." "He reported the child enjoyed time at his home, said she wanted to visit again, and liked their home because everyone was nice." Mother told C.H. that presumed father and stepmother had threatened her with reduced visitation with the children if she gave C.H. more visitation with minor. He told mother he would travel to California to take a paternity test and seek full custody of minor.

At the hearing on May 3, 2022, the parties requested the jurisdictional hearing be continued so the matter could be set for mediation. Counsel for the children expressed disagreement with the department's recommendation that the court dismiss the a.1 allegation. The court referred the matter for mediation and continued the jurisdictional hearing.

C.H. appeared at the hearing represented by counsel. Counsel for C.H. requested predispositional services including "telephone or remote visits." The court ordered telephone or video visits.

The mediation reports of June 16, 2022, reflected the department agreed to dismiss the b.3 and b.4 allegations; mother submitted on the b.6 allegation. Mother and presumed father agreed to a disposition which included reunification services for both. Minor's counsel contested the department's recommendation to drop substance abuse outpatient treatment from presumed father's case plan. C.H. contested the department's recommendation to find him unentitled to services.

At the hearing on June 28, 2022, counsel for the department stated, with respect to C.H., "I think we would need a paternity test at this point." The department indicated no birth certificate had yet been submitted. The court noted, "I'll give authority for a test as long as there's not a father named on the birth certificate. If there is, I would not give authority." Presumed father stated that he was on the birth certificate. The court asked him to provide a copy of the birth certificate to the department. The court implied that it should reverse its order for a paternity test. Counsel for the department responded, "I think we should wait for the birth certificate." The court agreed.[2]

An additional information for the court filed August 22, 2022, reflected that C.H. had not paternity tested because he believed the court had denied the request. At the

_____

[2] It does not appear that the birth certificate was ever submitted.

hearing on August 22, 2022, at the behest of the department and counsel for C.H., the court ordered C.H. to paternity test.

On September 22, 2022, the social worker filed an additional information for the court in which she reported that a paternity test confirmed C.H. as the biological father of minor. C.H. had had weekly monitored video chats with minor for the past two months. He reported that minor referred to him as her " 'best friend.' " C.H. wanted minor to come live with him. The department now proposed that C.H. and minor "participate in family therapy . . . in order to build a relationship and learn how to bond . . . ."

Mother had failed to show for testing on 10 occasions. She tested positive for amphetamines and marijuana on the only occasion on which she had tested and for which the department had results.

The department filed an amended petition in which they alleged C.H. had failed to protect minor (b.8) and failed provide for her (b.9 & g.10). The court detained minor and referred the matter for mediation with respect to the allegations against C.H.

The mediation report of September 30, 2022, reflected the parties agreed to dismiss the b.9 and g.10 allegations against C.H.; the parties agreed to modify the b.8 allegation to provide that C.H. had failed to establish paternity for minor and did not support her. They agreed to reunification services for C.H.

At the hearing on October 24, 2022, C.H.'s counsel requested minor be made available as a witness at the jurisdiction hearing, which the court granted. Counsel for the department noted that although father had traveled from Missouri to California for the

hearing, "I don't think it's clear in the minute orders whether he was entitled to in-person visits, so we would ask for authority for him to have supervised visits when he is in California." The court ordered once weekly, two-hour, supervised visitation while C.H. was in California.

In the additional information for the court filed December 2, 2022, the social worker reported that during a supervised visitation on October 24, 2022, minor greeted C.H. with a hug and told him that she missed him. C.H. "demonstrated interest in the child's wellbeing, her placement and school performance." He "was attentive and loving" toward minor. Minor stated that she wanted to live with C.H.

In the January 6, 2023, additional information for the court, the social worker reported that C.H.'s home had been positively assessed. The department was recommending minor be placed with C.H. with services.

At the hearing on January 9, 2023, counsel for the presumed father objected to placement of minor with C.H. The court sustained the amended petition and removed minor from parents' custody.

As to disposition, the court noted, "I can order the family maintenance with [C.H.], against [presumed father's] objection. I think it is appropriate. He is mere bio, but it is in the best interest." "I do have to do an ICPC. I'll order expedited ICPC with [C.H.]." The court ordered family maintenance services "stayed pending clearance expedited ICPC of [C.H.'s] home for placement."

8

## II. DISCUSSION

Presumed father contends the court abused its discretion in placing minor with C.H. The department agrees that a juvenile court does not have authority under section 361.2 to place a child with a "mere biological parent"; however, the department maintains that a juvenile court has discretion to order such a placement under its broad authority to act in a child's best interest. Thus, the department argues the court acted within its discretion in placing minor with C.H. We agree with the department.

"[A] biological father is not entitled to custody under section 361.2, or reunification services under section 361.5 if he does not attain presumed father status prior to the termination of any reunification period, [but] he may move under section 388 for a hearing to reconsider the juvenile court's earlier rulings based on new evidence or changed circumstances." (*In re Zacharia D.* (1993) 6 Cal.4th 435, 454.) Where the father "was a mere biological father, and was not entitled to presumed father status, the order granting him custody was in error." (*In re E.T.* (2013) 217 Cal.App.4th 426, 429-430; *In re Vincent M.* (2008) 161 Cal.App.4th 943, 955 [" 'a biological father is not entitled to custody under section 361.2' "]; *In re Andrew L.* (2004) 122 Cal.App.4th 178, 191 [same]; but see *In re A.J.* (2013) 214 Cal.App.4th 525, 536, 538 (*A.J.*) [court's placement of the minor with the "mere biological father" reflects that section "361.2 did not govern the juvenile court's analysis"].)

The juvenile court has broad discretion in crafting orders for the well-being of a dependent child and may render "any and all reasonable orders for the care, supervision,

custody, conduct, maintenance, and support of the child." (§ 362, subd. (a); § 245.5 [The juvenile court "may direct all such orders to the parent" of a dependent child "as the court deems necessary and proper for the best interests of" the child, including orders concerning "the care, supervision, custody, conduct, maintenance, and support" of the child.].)

The court must consider a child's best interest when deciding on a child's placement. (§ 361.3, subd. (a)(1).) " '[T]he fundamental premise of dependency law is to serve the best interests of the dependent child.' " (*A.J.*, *supra*, 214 Cal.App.4th at p. 536.) "The law provides the juvenile courts with the necessary tools and guidelines, as well as broad discretion, to make appropriate orders regarding dependent children consistent with this foundational principle." (*Ibid.*)

Here, the juvenile court acted within its broad discretion in determining placement with C.H. was in minor's best interest. Although C.H. was minor's "mere biological father," he expressed an interest in minor as soon as the dependency proceedings began. He personally appeared at most of the hearings.

C.H. had a previous relationship with minor which included five to 10 visits and four overnight visits. At one of the visits "[h]e reported that the next and most previous visit with [minor] at his home occurred in June or July of 2021 and lasted for a week." "He reported the child enjoyed time at his home, said she wanted to visit again, and liked their home because everyone was nice."

10

C.H. subsequently had weekly, monitored video calls with minor for two months. He reported that minor referred to him as her " 'best friend.' " C.H. wanted minor to come live with him. During a supervised, in-person visit, minor greeted C.H. with a hug and told him that she missed him. C.H. "demonstrated interest in the child's wellbeing, her placement and school performance." He "was attentive and loving" toward minor. Minor stated that she wanted to live with C.H. His home had been positively assessed by the department. Thus, the court acted within its broad discretion in determining that placement of minor with C.H. was in her best interest.

In his reply brief and at oral argument, presumed father argued that the juvenile court failed to consider the difficulty the court's placement of minor 1,500 miles away would pose for the maintenance of her relationship with her sibling and for visitation with presumed father.

First, presumed father forfeited the issue by failing to make this specific argument below. Although presumed father argued broadly that he wanted to reunify with both minors and have them placed with him, he did not argue that placement of minor with C.H. would interfere with his visitation or minor's relationship with her sister. (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862 [an appellant forfeits an issue when he makes only a blanket, conclusory statement, with no discussion of authority as it applies to the facts of the case]; see *In re Sheena K.* (2007) 40 Cal.4th 875, 887 [although legal errors may not be forfeited, factual issues should be raised in the first instance].)

Second, " 'We will not ordinarily consider issues raised for the first time in a reply brief.' " (*Golden Door Properties*, *LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 559 (*Golden*) [" 'Fairness militates against allowing an appellant to raise an issue for the first time in a reply brief because consideration of the issue deprives the respondent of the opportunity to counter the appellant by raising opposing arguments about the new issue.' "].)[3]

Third, the record is replete with mentions of both minor's sibling and the distance of C.H.'s residence. In fact, the court repeatedly mentioned that C.H. lived in Missouri at the hearing at which it placed minor with C.H. Thus, we infer that the court did consider any potential interference the distance would impose on both presumed father's visitation and the sibling relationship.

Fourth and finally, the court's "[f]ailure" to explicitly address each specific factor raised by presumed father on appeal is not an abuse of its discretion. (See *In re Marriage of Diamond* (2021) 72 Cal.App.5th 595, 602 [the court is not required to *expressly* address each factor unless statutorily required]; see *People v. Nevill* (1985) 167 Cal.App.3d 198, 202 [sentencing court is presumed to have considered all relevant factors even if not expressly articulated].) Here, we presume that the court properly

---

[3] Presumed father's argument in his opening brief was that the court acted outside its *legal* authority in placing minor with C.H. Only in his reply brief did he argue that the court abused its discretion in its *factual* analysis. Thus, this is not a mere elaboration of an issue already exposited, but the raising of a new issue. (*Golden*, *supra*, 50 Cal.App.5th at p. 559 [" 'An issue is new if it does more than elaborate on issues raised in the opening brief or rebut arguments made by the respondent in respondent's brief.' "].)

considered all relevant criteria when rendering its decision.  Thus, the court acted within its broad discretion in determining that placement of minor with C.H. was in her best interest.

## III.  DISPOSITION

The juvenile's court's order placing minor with C.H. is affirmed.

CERTIFIED FOR PUBLICATION

McKINSTER_____

Acting P. J.

We concur:


MILLER_____

J.


RAPHAEL_____

J.